**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BANGALLY TUNKARA,**<br><br>***Petitioner*,**<br>**v.**<br><br>**TODD BLANCHE,** U.S. Attorney General; **DAVID J. VENTURELLA,** Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; **MARCOS CHARLES,** Acting Executive Associate Director for Enforcement and Removal Operations; **MARY DE ANDA-YBARRA,** Field Office Director of Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement; **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY;** *and* **WARDEN** of ERO El Paso Camp East Montana,<br><br>***Respondents*.** | § § § § § § § § § § § § § § § § § § § § § § | **EP-26-CV-01906-DCG** |

**ORDER TO PROVIDE SUPPLEMENTAL BRIEFING**

The Court **ORDERS** both parties to file **SUPPLEMENTAL BRIEFS** addressing the following questions:

**Question #1**

The government claims that it may lawfully detain Petitioner under 8 U.S.C. § 1231(a)(1)(C),[1] which allows the government to detain a noncitizen who fails to cooperate with the government's efforts to remove them from the country.[2] As the regulation implementing

[1] Resp., ECF No. 5, at 4 n.4; Notice Failure to Comply, ECF No. 8-1, at 1.

[2] 8 U.S.C. § 1231(a)(1)(C).

§ 1231(a)(1)(C) contemplates, the government served Petitioner with a Notice of Failure to Comply with removal.[3] That regulation requires a Notice of Failure to Comply to include, *inter alia*: (1) "the circumstances demonstrating [the noncitizen's] failure to comply" and (2) "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements."[4]

For the first prong, the Notice here may have advised Petitioner of the "circumstances demonstrating his failure to comply" by explaining that he failed to comply with a scheduled removal to the Gambia on August 26, 2026.[5] But the Notice itself does not specifically explain what actions Petitioner took to prevent that scheduled removal. For the second prong, the Notice told Petitioner that he must "demonstrate that [he is] making reasonable efforts to comply with the order of removal, and that [he is] cooperating with ICE's efforts to remove [him]," and it also referenced a form I-229(a) allegedly informing Petitioner of the actions he must take to comply.[6] On the other hand, the Notice itself does not explain the specific steps Petitioner must take to constitute cooperation with removal.

Did the Notice of Failure to Comply in this case satisfy the regulatory requirements described above?

---

[3] *See* Notice Failure to Comply at 1 (citing 8 C.F.R. § 241.4(g)).

[4] 8 C.F.R. § 241.4(g)(5)(ii).

[5] *See* Notice Failure to Comply at 1.

[6] *Id.*

**Question #2**

The government argues that Petitioner's failure to comply with removal occurred on August 26, 2026,[7] but it did not serve the Notice of Failure to Comply until October 3, 2026.[8] That might not matter at all: 8 C.F.R. § 241.4(g)(5)(iv) provides that if the government doesn't serve a Notice during the 90-day removal period, the noncitizen's noncompliance is still not excused.[9] That may imply that the government can serve the Notice even after the 90-day removal period expires. Although the Court is not aware of any time limit within which the government must serve the Notice, the Court anticipates that Petitioner may wish to research this issue and respond.

Does the fact that the Notice of Failure to Comply was served over a month after the allegedly noncompliant act bear on the Notice's legal validity?[10]

**Question #3**

Petitioner's Reply posits that even if Petitioner's detention has now become justified, either based on § 1231(a)(1)(C) or on an increased likelihood of removal under § 1231(a)(6), his

---

[7] Resp. at 4.

[8] *See* Resp'ts' Advisory, ECF No. 8; Notice Failure to Comply at 2.

[9] 8 C.F.R. § 241.4(g)(5)(iv).

[10] There may be some overlap between Question #2 and Question #3: if the § 1231(a)(1)(C) invocation was not proper until the October Notice, then it's possible (*arguendo*) that Petitioner's detention was unlawful for the period from August 26 to October 3 but that it has now become lawful. Arguments about what the Court should do in that scenario should be addressed under Question #3. Question #2 is focused on whether the Notice was valid *at all* where it was served over a month after Petitioner's noncompliant act.

initial re-detention in January was still unlawful.[11] But even if he's right, he doesn't specifically describe what the remedy should be.[12]

Assuming *arguendo* that (1) Petitioner's re-detention in January was unlawful but (2) his *current* detention has become lawful (either under § 1231(a)(1)(C) or § 1231(a)(6)), what remedy does Petitioner have, if any? Would his remedy be release from custody notwithstanding a proper invocation of § 1231(a)(1)(C) and/or § 1231(a)(6) sometime during his detention?

* * *

Petitioner's supplemental brief is due on **October 16, 2026**.

Respondents' supplemental brief is due on **October 23, 2026**.

**So ORDERED and SIGNED this 6th day of October 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

[11] Pet'r Reply, ECF No. 6, at 1 (noting January re-detention), *id.* at 5–6 ("Whatever the present prospects for Petitioner's removal, Respondents still must establish the legal basis on which his prior release was revoked."); *id.* at 8 (arguing that a proper § 1231(a)(1)(C) invocation in August "cannot retroactively establish the regulatory predicate for revoking Petitioner's release seven months earlier.").

[12] *See generally* Pet'r Reply.